Since I guess we're ready, this is the case of Ismie Mutual Insurance Company v. Eugene Pergament. Okay, that's what I said earlier and I thought I was wrong. Northwestern Reproduction and Company Terry Kessel and Doug Kessel. This is 123-0787. Our procedure is, well first we've Justice Aurelia Puchinski, Justice Cynthia Cobbs, and Justice James Fitzgerald Smith. The appellant goes first, has approximately 14 or 15 minutes. We usually don't interrupt unless you get way off the field. Then we ask questions. Then the appellee goes forth with the same and then the conclusion. With that, you may start. Thank you. My name is Joel Handler and I represent the appellants in this case. May it please the court. The circuit court's entry of summary judgment on April 10, 2023 should be reversed. The plaintiff, Ismie, does not controvert, as we've cited in our brief, that where an insurer breaches the terms of its insurance contract with the insurer, it cannot rely on the terms of that same contract to avoid its obligations under the contract. That's from the Shull-Bovis decision that we cite. The plaintiff appellee brief doesn't even discuss this controlling rule of law. Besides ignoring this rule of law, Ismie also admits in its appellee's brief that certain questions of fact existed in this matter, which clearly should have precluded summary judgment here. And that's if you look at pages 1, 26 through 28 of their brief. The salient facts in this case, your honors, establish that since the Kessel suit was filed against Dr. Pergamon on May 28, 2010 through December 5th of 2016, Ismie repeatedly indicated it was going to identify Dr. Pergamon with respect to that suit. You see on July 19th of 2010, Ismie confirmed that he had coverage for Dr. Pergamon under his medical practice coverage policy and that the policy limits were $2 million per person and $4 million per occurrence. And that's shown in the record at 1447 to 1479 and 1480 through 1514. At that time, Katie Nicholson, Ismie's professional liability analyst, made determinations of whether or not there was coverage and that Ismie had the duty to identify Pergamon. That's shown in the record at 1525. And on that date, Ms. Nicholson indicated that Pergamon would be covered under his policy and Ismie acknowledged that it did insure him for his work as a medical geneticist in his treatment of patients. And that's at RC 1480 to 2531. On November 4th, 2010, Michelle Stensel, Nicholson's immediate supervisor, made an entry in Ismie's notes on this case, in which she acknowledged that Ismie insured Pergamon for his work as a medical geneticist. It's RC 1480. On November 16th of 2010- What's the difference between a medical director and what you're calling him? Because medical director is he's working and doing administrative work, Judge. This, what we're, we sued him from the get-go is his individual capacity as a geneticist for the work that he rendered to my clients, and this time it was the Kessels, Taryn and Doug Kessel. So it's all this stuff that we, and we alleged from the first complaint to the fourth complaint that he was being sued as an individual in this individual capacity and not as medical director because what Ismie was claiming is, if he's a medical director, we don't insure him for that. Okay. All right. Okay. So on November 16th of 2010, Ismie issued Pergamon a reservation of rights letter in which it indicated that Pergamon's policy provided indemnification for covered claims arising out of the medical care and treatment rendered to patients and that Ismie would indemnify him for his medical care rendered to the Kessels as a medical geneticist. On October 18th of 2016, Nicholson sent another letter to Dr. Pergamon advising him of the correct settlement demand that were made by the Kessels and that Pergamon's policy indemnified him for covered claims arising out of the medical care and treatment that he rendered to the Kessels and that Ismie would indemnify him for his medical care and treatment. That's in RC 1910 to 1912. But what do you have? What did we see here in this case? What happened between October 18th, 2016, when Nicholson sent that letter to Pergamon saying you're going to be indemnified, to December 5th, 2016, seven weeks later, when Krista Frick, an attorney for Ismie, sent Pergamon a letter saying that Ismie would no longer indemnify him and therefore directly breach the contract that existed between Pergamon and Ismie. Absolutely nothing that would warrant Ismie to no longer indemnify. Let's go through those events. First, on October 26th, I sent a letter to Eugene Scone, one of the attorneys for Pergamon, to discuss the upcoming deposition of the Kessels expert, Dr. Wainwright. And in that letter, I advised Dr. Pergamon that the Kessels were proceeding against him in an individual capacity for the medical care and treatment given to the Kessels of medical genesis. And that's in R.C. 1914. On November 1st, Pergamon's attorney, Mr. Scone, sent a letter to Katie Nicholson in which he indicated that Ismie had a faulty approach about the Kessels suit, that based on Pergamon's medical care and treatment, and that's shown on R.C. 1916 to 1921, namely that Pergamon wasn't acting as a director of one of its companies, but acting as the individual geneticist. On November 4th, what happens? The defendants, in my case, I was representing the Kessels, took Dr. Grody's deposition. On November 8th, what happens is that Mr. Scone sends a letter to Ms. Nicholson discussing what transpired at that deposition and confirmed that Dr. Grody's opinions were directed to Dr. Pergamon as the Kessels treating medical geneticists. That's R.C. 1999 to 2001. Pergamon's attorney then followed up with another letter to Nicholson, I mean with an email, on November 8th in which he indicated that the case could be settled within the policy limits and that was R.C. 2003. Nicholson responded to Pergamon's attorney by indicating that she was waiting for the full details of the deposition of Kessels' expert and then ISMI would be taking steps to make a final determination of its coverage position and that she would provide Mr. Scone with the response. That's R.C. 2005. Justices, that response never occurred, never happened. The next event was on November 11th 2016. Pergamon's attorney sends Nicholson an email and indicated that ISMI had been defending the case for six years and had the benefit of extensive discovery, multiple expert reviews, and that trial was about two months away and he indicated that he and Pergamon were ready to work with ISMI to resolve the matter because, but they were concerned by ISMI's delays. That's R.C. 2007. And then on November 30th, the defendants in the Kessel case took the deposition of Dr. Gregory Talaga. He was a surgeon in Wisconsin who saw Zeb Kessel, the child, and their purpose was to determine whether he needed a liver transplant plan because he had MSUD. That had nothing to do with the insurance issues here. So through December 5th, there was not one stitch of evidence in this case that Nicholson indicated either to Kessel or anyone else at ISMI, that ISMI should deny indemnification to Pergamon. Then what you have is on December 5th, ISMI breaches the agreement with Pergamon when Ms. Frick sends a letter indicating that ISMI would not provide indemnification to Pergamon. And it's important to note that Stencil admitted at her deposition in this case that the evidence showed that Dr. Pergamon was acting as an individual medical geneticist of the Kessels and not as a representative of his companies and therefore she admitted under the policy ISMI would be obligated to indemnify Dr. Pergamon. That's at RC-1598. Not only did Ms. Frick send that letter on December 5th of 2016, but ISMI then doubled down on its position on July 11th when Ms. Frick sent an email to Mr. Schoon indicating that ISMI's position had not changed and they were not interested or willing to participate in any settlement discussions. That was RC-2024-2025. The evidence here is uncontroverted that there was no event whatsoever during that seven-week period that warranted ISMI's admitted breach of its agreement to provide indemnification to Dr. Pergamon. In fact, ISMI did admit even in a police brief on pages four and five and seven that Dr. Pergamon was sued in an individual capacity from the inception of this case back in 2010. Now what did ISMI do here to challenge that no event occurred between October 18th, 2016 when Nicholson sent a letter acknowledging indemnification and December 5th, 2016 when Ms. Frick sent a letter to Pergamon's attorney indicating that ISMI now had denied its duty to indemnify. The answer is that they advance a bunch of arguments as shown in their brief, none of which can overcome that the circuit court's summary judgment should be reversed. It first claims that under count two of its first amended complaint, Pergamon suffered no covered loss. It then claims that it didn't breach the agreement with Pergamon on indemnification because it allegedly followed the procedure prescribed for insurance who do not owe a duty to indemnify. It then claims it had a good faith basis to deny coverage based on the language of the policy, the allegations, and the Kessler's complaints and the facts underlying the claims against Pergamon. It then claims that ISMI's coverage was based on whether Pergamon's covered conduct caused a loss and then it claims that the settlement agreement between Pergamon and the Kessler's was unreasonable as a matter of the law since it obligated ISMI to identify parties not covered by the ISMI policy and exceeded the policy limits which it clearly did. And then they merely conclude that saying the circuit court's denial of the summary judgment on my client's counterclaim was justified. Let's go through some of these claims. With regard to ISMI's claim that Pergamon suffered no covered loss. It relies on the Guillen decision which as we showed in our briefs actually vitiates rather than buttresses ISMI's position. Because the court says there where the insurance company breached the duty on the contract an insurer was entitled to have the legally obligated to pay language liberally construed in his or her favor. Clearly ISMI breached the contract here because of its refusal to identify Dr. Pergamon. It did defend though did it not? It did defend but remember judge the duty to defend and the duty to to identify are not co-extents. They're separate and they're separate obligations and they're separate. But I don't have to do anything other than prepare to indemnify if it gets to the point that you show that there actually is an expenditure or damages and I'm not seeing it here. Well there there is the the damage because we entered into this agreement and we we arrived at the amount in question and therefore when you say you mean the damage to to Dr. Pergamon correct? Yeah. Yeah well but it is no different than what happened in the Guillen decision even though that dealt with a duty to defend. Because if you they are co-extensive there is this obligation to to provide indemnification. So if you had a situation here if we carried this forward and we went to trial on this case and we would have gotten a judgment against Dr. Pergamon. Dr. Pergamon then is up the creek because he has no insurance coverage and that was already determined more than two or three years before this settlement was even entered. So they're by virtue of the obligations the duty to identify the duty to to defend being not being co-extensive. Then I think that the reasoning as we show in the in the Atchale-Bogas case would is clearly applicable here and clearly would subject ISME to liability. So getting back on with regard to the claim here that ISME's contention that it didn't breach the policy by denying a duty to indemnify does totally ignore the evidence that I've summarized for you. There's no question here that the Kessels from the outset of the case were proceeding against Dr. Pergamon in an individual capacity and not as the medical director of his company. There is also no merit that to the ISME's contention that it didn't breach the agreement by denying the duty to indemnify because it followed the procedure prescribed for insurance who did not insurers who did not owe a duty to indemnify. What procedure? There was no evidence the there was no evidence of the procedure when I took the depositions of both Stencil and Miss Nicholson. What did they say with regard to that? They said here that that there was no set procedure and it was all basically they had the discretion to do what basically whether or not there was a duty to indemnify that's shown in RC 1644. Thus ISME did not have a basis here to deny its duty to indemnify a judge. There was nothing in the pleadings that were filed on behalf of the Kessels that gave ISME an adequate basis to deny its duty to indemnify. In fact ISME admits that all the complaints all the complaints that were filed in the Kessel case against the Pergamon against Dr. Pergamon alleged he was acting in individual capacity as the Kessels treating physician. Thus the evidence obtained during discovery does not support ISME's baseless contention here that Pergamon did not cause the Kessels any loss in accordance with the provisions of its policy. There was more than evidence presented here that showed Pergamon's personal liability here. Thus ISME was not entitled to a summary judgment in this manner for the amount that it was legally that Pergamon was legally obligated to pay. The evidence in this case also showed that under count three of ISME's amended complaint which I circuit court rendered moot but I still covered it in the brief. The settlement agreement entered between the Kessels and Pergamon was reasonable as a matter of law. Merely because corporations were included in the release language does not you know basically negate that agreement. The policy limits also in question and I don't know where the ISME was coming from. There was no question there was a two million, four million dollar policy and the settlement which you know we just we disclosed under the confidentiality agreement clearly fell within that because you had two plaintiffs involved Doug Kessel and Taryn Kessel. We showed in our brief on pages 19 and 20 that ISME's reliance on the transcontinental insurance case as well as the owner's insurance company case was misplaced because the Kessel suit here was brought against Pergamon under the policy. Neither of those decisions indicated that if the settlement was reached with an insured but the insured corporations were brought in were included in the release language that somehow exculpated the insurance company from having the responsibility to pay the settlement. You're starting to run out of time. Okay well all right I appreciate that judge. I'll reserve on deal with it when I come back on my rebuttal and I would only ask that the court reverse the decision of the circuit court and either enter summary judgment for the defendants in this matter or remand it back for trial. So thank you for your time. Any questions? I do have a question. Mr. Handler you keep saying that the 12-5-2016 letter denied indemnity but isn't it more accurate to say that they said we understand we have a duty to defend we're going to continue to keep doing that and we we believe we might not be responsible to indemnify. No I think it says that they're not. The letter said we do not believe we have a duty to indemnify. So that wasn't the same that's not quite the same as saying we're not going to indemnify. That left it open to a declaratory judgment action for some court to decide whether they had the duty if there was still a question. Well I think judge that when someone says we don't believe that we have a duty to indemnify and then it's brought to their attention about it and then they say you know we're not changing our position that we don't have a duty. I think it's pretty clear. Their position was they didn't believe they had a duty to indemnify but their option was always to file a declaratory judgment action to find out. Right but you don't have a situation judge where if they go ahead and don't provide the indemnification and they hadn't denied the indemnification. I think that they did by their subsequent conduct judge because well later after the settlement agreement but at this point 12-5-2016 they're just saying be on notice we don't think we have a duty to indemnify now and then the the law and case law gives them the right to go ahead and file a deck action to find out. So there's sort of a question mark over it not a definitive absolute positively no not ever and that's that's why I think that you and I are going to have a hard time sort of agreeing on what this whole train of events meant. Yeah but again if it if they you don't see judge after the 12-5 letter saying hey listen uh we're going to go do this to ascertain whether we do have the duty to indemnify. Well they had to see what the settlement agreement was first right? No I think what they did here because the settlement agreement didn't come until late much later right much later much later and then when Mr. Schoon was trying to get things going and basically it was every every response you know you're getting no response. Well let me just I understand all that but let me just ask you something so having received this 12-5-16 letter that says you know we don't really think we have a duty to indemnify we're going to continue to defend but we're not sure about this duty to indemnify didn't that put all the defendants on notice that their settlement agreement better be pretty clear that Dr. Pergament was personally liable that it had to be within the limits of the policy that it had to be for treatment of patients for medical care for covered care none of which is I don't think articulated in the settlement agreement. So couldn't the settlement agreement have been written to more narrowly track the actual policy language? But in theory sure it could have okay but the point of it is judge it doesn't negate the claim here that that we're proceeding. Well I've heard anybody can make a claim but here they're on notice in December of 2016 hey you're working on this case whip it into shape to make you know if you want to be covered that it meets the policy. I'm not finding that that was done. But when Mr. Schoom started you know with his dialogue both with Nicholson as well as the attorneys to try to get some type of response either there was no response or the response was just very superficial here to put him on note to you know to say hey okay. And I interrupted you and I apologize for that but he oh they always had a copy of the exact language the policy required there was never a mystery they had the policy in front of them. So I don't know what response other than the letters and the policy anybody could have asked for. Well but but it could have been firm firmer confirmation to say hey listen our intent is to either file suit with regard to the duty to indemnify which wasn't done they just did it you know later on after as you say after the settlement had been reached but you know this is you know a few years down the pike. So what I'm getting at here is if you're going to go ahead and you say we don't believe that we have the obligation to do it all right well and then Mr. Schoom asked for further clarification and doesn't get it what conclusion does he draw other than that they're not going to provide indemnification and then when when you then look at the deposition testimony of Stencil as well as Nicholson you know they came back and they said well we're we we still have as of today I think one of them said as of today we we haven't made a decision yet we're asking for an advisory opinion from the circuit court about whether we have a duty to indemnify when you know we're clearly clearly the discussion showed that nothing occurred they never explained judge why they don't have the they don't believe they have a reason to indemnify they never did that and if they could have done that they would have solved a lot of problems. Well Mr. Handler can you point to any specific loss that Dr. Pergamon suffered personally? The loss that well yeah the the that he's again in terms of a financial loss he entered into you know and entered into this settlement agreement with uh with my clients. Well how many dollars did he have to pay the Kessels under the settlement agreement? Any? Well he would if if it turns out that this is a situation where he wouldn't have to pay anything. Well that's what the settlement agreement says he's released from anything. Then we would have a problem in terms of a a potential fraud action on his part so. Okay so the answer is as we're sitting here right now you cannot point you cannot point to any amount that is required. No my question was is he required by this settlement agreement to pay the everybody is sorry about what happened to the Kessels there's nobody that would deny that but what specifically can you show me Dr. Pergamon owes the Kessels under this settlement agreement? What dollar amount? Right now he would not owe anything under the settlement. So there is no no loss to him personally? Well personally but again the fact that that happened does not kick in the Gagan case because there's a breach of the term of the agreement. They can't use judge they can't use the insurance agreement both as a sword and a shield here and that's what they're doing. All right they can't do it. All right so they have a situation if you say we're not you know we don't believe we have an obligation to to indemnify you. You never explain the reason why you don't. Up to date they still haven't explained the reason why they don't believe they have it. The brief as you saw their brief doesn't explain the reason why. The brief doesn't address the shale boat as a case then I think under that decision that that decision is controlling here and they have an obligation to pay. Thank you. Any further questions? All right I just think that so the real linchpin here is whether whether there is any evidence of a breach and it's your position that they breached with respect to the duty to indemnify and if this court were to find no breach then the legal obligation to pay goes away. Is that right? Well if you find that they didn't breach then then my argument is not successful judge. But the point goes away. Yeah but what I'm saying is it shouldn't go away. It shouldn't. Okay let's see. Pelley's turn. Hello good afternoon members of the court. James Stamos on behalf of ISMI. I think that throughout the the briefing and now in this argument that my colleague Mr. Handler and I are talking right past each other because what's before you is a decision by the circuit court a summary judgment decision which was very narrowly based. It's based on the notion that that the the insurer Dr. Pergamon never was obligated to pay. And ISMI's policy I mean you'll notice that neither in the brief nor an argument today has the as as counsel adverted to any language of the policy is actually asking you to find as a matter of law that ISMI's policy covered the loss here when there was no loss we'll put that away aside for a second without ever telling you what's in the policy and how it applies. And we've done that in our brief and and I think that that that what occurred here was ISMI in fact did explain in its reservation of rights letter that counsel referred to a few moments ago sent a reservation of rights letter at the beginning of the case telling Dr. Pergamon we will defend you for your work we will we we will defend you in this case. We will indemnify you for losses that you cause because it's conduct that is losses due to conduct that is covered by policies not losses due to what people talk about happened. We will cover you for losses that are based upon your conduct as a as a as a physician treating patients. We will not cover you for your conduct as a medical director. We will not cover you for your conduct in any managerial activity. And that's in the letter that they sent. So the idea that there was a mystery as to what their what the basis for the was it's just not so it's in that letter. And when Ms. Frick wrote the letter on December 5th that was not to Dr. Pergamon's lawyer that was to Mr. Schoon who didn't represent Dr. Pergamon. He represented two parties that everyone agreed ISMI didn't cover which were the corporations. So I and at that time Ms. Frick's letter simply said we don't we don't believe we cover well that's what the lawsuit's for. And the case law we've cited demonstrates that when an insurance company believes that it does not have a duty to indemnify but the language of the of the policy I'm sorry the language of the complaint the four corners of the complaint contain allegations that implicate a potential coverage. They have to defend under a reservation of rights which we did at vast expense I should say and through the end of the case. And then the law provides that we may later litigate through a declaratory judgment action whether the conduct that caused ultimately caused the loss at issue was covered conduct. And here when counsel says well you know we it was inappropriate that we proceed this way because there was no evidence that suggested that the doctor was doing anything other than conducting himself as a treating doctor. If you look at the third amended complaint which was the which was the complaint extent at the time of the settlement agreement. The allegations of the complaint itself specifically say in paragraph 3 Dr. Pergament was at all times the medical director of NRG. If you look at paragraphs 3, 5, 6, 7, 8, and 10 Dr. Pergament was the medical director of NRG and NDPC that both corporations were established for screening certain syndromes including MSUD and that Asper Biotech was the agent. And there was another allegation at paragraphs 29 and 30 Dr. Pergament, NDPC, NRG those are the two corporations and Asper breached their duties to the Kessels. So ISBI said well wait a minute we don't cover those corporations and we don't cover you as medical director so we're going to defend you under a reservation of rights but we're going to litigate about whether if there's a trial in this case or if there's a if there's a finding of fact that takes place during the declaratory judgment case we're going to find out whether the conduct that caused the loss here was as a medical director caused by the corporations or caused by you as a treating physician. That's what's pending and that is the only thing an insurance company can do. We did precisely as we describe in our brief we followed precisely the course insurance companies obligated to follow. And so now let's get back to what we cover. In our complaint we walk through chapter and verse what our insurance provides. And it provides that we pay a loss that is let me pull up the exact language. I'm sorry here we are. We pay a loss we'll pay amounts subject to the limits of liability any insured is quote legally obligated to pay as damages caused by a covered claim. So unless the insured becomes legally obligated to pay damages we don't cover anything. There's nothing to cover. And I think what's critical is this is not the first rodeo for the courts in this in this situation. We cite it to the United Services case, the first district 2005 case, as well as the travelers case, the 2001 Supreme Court case, both of which held that there is no duty to indemnify until the insured is legally obligated to pay something. So we didn't have anything to agree or not agree to do before he became legally became legally obligated. Now did he ever become legally obligated? That's what the summary judgment decision was about. And that's where the Gillen case comes in because in Gillen what the court was dealing with there was an insurance company that had breached its duty to defend. Counsel suggested that it dealt with breached its duty under the insurance policy. No, no, it breached its duty to defend, which was the operative event in that case for that insurance company. And as a consequence, in that case, even though you could have read the settlement agreement made by the insured who went ahead and defended itself as a family defended themselves and then settled the case, you could have read it as though it was a release. But the court found that number one, the insurance policy, the insurance company could not ask for a strict reading of that language because they had abandoned their insured. And because they had abandoned their insured, the insured was entitled to a liberal reading of that language. And in that case, the court said, well, we're not going to hold them strictly to the language of the settlement agreement. You know, even though technically they weren't going to have to pay at the end, we're going to give them the benefit of the doubt and the insurance company is out of luck. That's not us. We didn't do that. That's the first point. The second point is when you go to the Gillen decision itself and what occurred in that case, what the court found was that in Gillen, in fact, the insureds, the settlement agreement that they had did actually obligate them to pay money. According to the court, this is what the payment language of that agreement said. Subject to paragraph 10 below requiring court approval of the settlement. Again, this is in the Gillen case. Defendants will pay plaintiff the sum of $600,000 to be satisfied solely through the assignment of plaintiff reflected in paragraph 10. What the court went on to say was, even though as a technical matter, they weren't ever going to have to pay that money, they were still legally obligated to pay that. And they would have a contract claim if someone tried to collect it from them, if the plaintiff tried to collect that from them. That's not what happened here. I've been doing this almost 45 years and almost all that time I've done coverage work and I've never seen a settlement agreement as ironclad as the one that occurred in this case. Because not only was there a release, Dr. Pergament was released. Dr. Pergament was given an indemnity agreement. Dr. Pergament was given a covenant not to sue. And there was a final paragraph, section 1.3, that basically that says, for the avoidance of doubt, effectively says, under no circumstances is he ever going to have to pay any money to anyone. And the circuit court read that language and the circumstances here and said, Dr. Pergament was never legally obligated to pay anything. Because the typical situation, similar to what happened in Gillen, but as the Supreme Court discussed in Gillen, the typical situation is where you have an insurance company that abandons their client, they're insured. And the insurer says, well, we're going to go ahead and settle the case. Usually what happens is there's a stipulated judgment. And then there's a covenant not to sue. We're going to have a judgment that says we owe you the money, but we're going to have an agreement that you're not going to, I'm sorry, a covenant not to execute, that we're not going to come after you for the money. There's still a legal obligation there, but if you sued for it, you would have the covenant not to execute as a defense. And then there's an assignment. That is not what happened here. The assignment was of something that didn't exist. There simply was no obligation ever. And there's nothing about anything Council has said here or in his brief that undermines any of that. That ISBI did what it was obligated to do in the circumstance when it had a more than a good faith basis. I mean, Council didn't touch on some of the facts here. Our view of the discovery, as we lay out fully in our brief, is that when you look at what happened here, Dr. Pergamut wanted to develop a laboratory that would be able to test Ashkenazi Jewish people who have certain illnesses that they're prone to that could be genetically tested. And he worked with a laboratory in Estonia, invested $12,000 in that laboratory. And as of 2007, two years before anything happened in this case, that became the laboratory that everybody, that every sample was sent to. It was, in our view, an administrative choice on his part. Running his business, we're going to use that lab. And that lab happened to blow the reed, as you might say, in the circumstance. But the point being, that wasn't part of his treating this patient. That's just where his office sent the lab choices to. It would be like if you used Quest Labs at your internist's office, and your lab sends all of your samples go there. That's not the practice of medicine. That's just the business arrangement you have with Quest Laboratories. And that's what we had here. But for the purposes of what we're litigating here today about, why we're here, it's the summary judgment that was entered below. And that summary judgment was based upon the complete absence of ever being a duty to pay any money. And that being the case, there was never a legal obligation to pay. And as a consequence, no matter what other facts exist in the case, they can't recover because our policy doesn't pay unless you become legally obligated to pay something. And counsel, again, has not cited a word of the policy to any contrary effect. And just to touch on another point, to reiterate, the insurance policy, counsel says, well, we sued the doctor in his individual capacity. We didn't sue him as a medical director. Well, first of all, the complaint references him repeatedly as a medical director. But more importantly, it doesn't matter what the reading says. It doesn't matter what the experts say about it. What matters is what the finder of fact finds the doctor did. And was it, did the thing he did cause injury? And if it did, is the thing he did covered by the insurance policy? Doesn't matter what Mr. Schoon wrote emails about in his view what the case was about, nor does nor the subjective intent of plaintiff's attorney when he brings the lawsuit. I'm only bringing it as a treating doctor, not as a medical director. Doesn't matter. Question is, was he acting as a medical director at the time as a factual matter to be found by a finder of fact? And that didn't occur here. We ask that you affirm summary judgment because absolutely nothing we've heard or seen in the brief or argument demonstrates that the circuit court was incorrect in entering summary judgment on count two. Any questions? No. Mr. Handler, you have four minutes to respond. Number one, Mr. Stamos indicated no finding of fact here. Well, there wasn't a finding of fact. The circuit court didn't find that he was operating as the medical director at all. Number two, the defendant admitted in its brief as well as in during the discovery of the case that Pergamon was sued in an individual capacity. No question about that. Mr. Stamos conveniently doesn't deal with the various allegations of the four complaints clearly in individual capacity that he was sued. So what you have here is you had, they breached the agreement. ISME breaches the agreement. Therefore, under the bogus decision, they can't go ahead and say, we're going to go ahead and rely on the strict provisions of the insurance policy. And therefore, you're out of luck. No, you can't use that. Again, as I say, it's both a sword and a shield here. And what you, that's what you've done. You have a situation where the agreement was entered and Pergamon was sued in the individual capacity. He did breach the agreement. And again, as I, in response to Justice Kuczynski's questions, when I said, you know, you have a situation. If you were going to say, well, we don't believe that we have the obligation to identify, then you should have been more affirmative in terms of it. When we were, when Mr. Soon was asking questions about it, asking for commitment, they wouldn't give any commitment whatsoever. And therefore, that's why the Guillen decision really works in favor of the defendants here and not the plaintiff. So with that in mind, I would ask your honors to please reverse this decision and as a worst case basis, then remand this matter back for a trial on all the issues that are, because the issues here are factual and contrary to what Mr. Stamos says, it being a narrow issue, the court, the standard of review on summary judgment, I don't have to lecture you with regard to that, is de novo. And if there's anything in here that would warrant a reversal, which there is, then this matter should be reversed. And I ask that you do so. Thank you for your time. Any questions? Thank you both. You were both very precise in your arguments. So we'll go back and review what you submitted and also what you argued. This comes down to contract. So we'll deal with that. Thank you both.